CAMPBELL, Judge.
This appeal is from an order granting a father’s petition to change custody of a child of the parties who at the time of the hearing was five years of age. The final judgment of dissolution of marriage, which awarded the primary custody of the minor child to the appellant wife, was entered on February 26, 1982.
Appellant raises three points on appeal:
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE VIDEO TAPE OF THE SEXUAL ABUSE INTERVIEW OF THE MINOR CHILD?
II.WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE HEARSAY STATEMENTS OF THE MINOR CHILD?
III.WHETHER THE TRIAL COURT ERRED WHEN IT RELIED UPON URINE TEST RESULTS *646 RECEIVED AFTER TRIAL IN RENDERING ITS ORDER?
After carefully considering all three points, we reverse. In doing so, we conclude that while the evidence attacked in appellant’s first two points may have been admissible evidence for the limited purposes for which it was offered, it is clear from a reading of the trial court’s order changing custody of the minor child that the trial court utilized that particular evidence in a manner that violated the rules of evidence and the limited conditions and purposes for which it was specifically offered by appellee.
In regard to appellant’s third issue, our reasoning is the same: It is not that the evidence was inadmissible, but that its utilization and the manner of its utilization by the trial judge was error. In order to clearly understand our reasoning, it will be beneficial to set forth the specific findings of the custody modification order in its entirety:
The present husband of the former wife, Michael Warner, has had numerous contacts with local law enforcement authorities. Those contacts have involved either alcohol, illegal drugs and narcotics and/or domestic disturbances. Michael Warner uses marijuana on a regular basis and keeps and maintains marijuana in his house. Evidence establishes that he has smoked and used marijuana in the presence of the minor child, Robert James Walker, with the knowledge and consent of the former wife. Said Michael Warner has also been accused of and investigated for sexual misconduct in the presence of the said minor child. Although Michael Warner is not formally charged with criminal charges, the evidence establishes that sexual misconduct has occurred in the minor child’s presence and it is consistent with all the other evidence in this case and with the abuse of illegal narcotics by Michael Warner, then the preponderance of the evidence is against Michael Warner on the issue of sexual misconduct. The former wife denies that she allows any such conduct, sexual or marijuana smoking, in the presence of the minor child, and denies that she uses any illegal drugs or narcotics. The former wife and her present husband, Michael Warner, consented to take a drug evaluation test for the Court to consider. Test results for Michael Warner were very positive for marijuana in that he had used marijuana very recently. Test results for the former wife, Melinda Warner, were very positive for marijuana in that she had used marijuana very recently. Not only is their credibility tarnished before this Court, they have both perjured themselves while testifying under oath in court. Therefore, there has been a material and substantial change of circumstances.
The video tape that is the subject of appellant’s first point on appeal was made when the child was interviewed by a deputy sheriff of the Highlands County Sheriff’s Department whose principal duties included the investigation of sex crimes and child abuse cases. At the time the video tape was offered, appellant’s attorney objected on the grounds that the child was not a competent witness and the video would be inadmissible because it presented the testimony of a child in a situation wherein the child responded to questions of the investigating officer. In response to the objection, appellee’s attorney admitted that the child was not competent to testify. At that point, we believe that appellant’s objection was well taken. However, appellee’s counsel, in explaining the reason he wished the court to view the video tape, specifically said as follows:
Judge, if the child is not competent to testify, that of course would be inadmissible. But, I think the Court could view the tape to see the emotional and mental attitude of the child. We contend, I think the best evidence of the child's need for some type of more mature and stable environment is in his actions. It’s the very reason he’s an incompetent witness that I’m going to ask the Court to view the tape, to see his attitude and the *647 aggressiveness and his emotional tendencies.
At that point, the court overruled appellant’s objection and allowed the introduction of the video tape. In view of the limited reason and explanation for which it was offered, we believe the court correctly ruled. However, the above-quoted portion of the court’s order shows quite obviously that the court utilized the video tape to establish as facts, or purported facts, certain statements elicited from the child during the investigation portrayed by the video tape. The court specifically found that:
[T]he evidence establishes that sexual misconduct has occurred in the minor child’s presence and it is consistent with all the other evidence in this case and with the abuse of illegal narcotics by Michael Warner, then the preponderance of the evidence is against Michael Warner on the issue of sexual misconduct.
Apart from the implications of the child made during the videotaping, there is not one word of testimony, or a shred of any other evidence in the record, that purports to establish sexual misconduct on the part of Michael Warner, appellant’s present husband and the child’s stepfather. Even the reference in the video tape itself to sexual misconduct is so nebulous that we would be forced to find that the issue of sexual misconduct was not supported by the evidence, even if the video tape had been admissible for the purpose of establishing the facts as stated by the minor child.
In considering appellant’s second point, we find that the court’s use of the child’s testimony concerning appellee’s drug use was improper for the same reasoning as that regarding the first point. In questioning the appellee/father, his attorney elicited hearsay statements of the child made in the father’s presence concerning purported drug use by the stepfather. When the testimony was objected to as hearsay, appellee’s attorney again responded:
Judge, we’re not offering this to prove what the child says is true. We have practically agreed that the child is an unreliable witness. So, it doesn’t even fall in, if it’s not offered for that purpose, in the definition of hearsay.
If the Court disagrees and declares it hearsay, I think there’s an exception when a child just comes up and says something. It’s a spontaneous statement: it’s not an interrogation of the child.
And further, we’re not offering it to show whether or not these things happened or didn’t happen but the child has knowledge of drugs beyond his years at five years old to show that he is a very sophisticated — and to rebut some of the other things.
We again agree that the statement was initially inadmissible as a hearsay statement and that it did not qualify as a spontaneous utterance, but that it may have been admissible for the limited purpose of showing the child’s knowledge of drugs and the child’s reaction to the subject of drugs. It is again obvious, however, from the court’s finding that the court used that testimony for fact-finding purposes contrary to the purpose for which it was offered and for which it may have been admissible.
Finally, in regard to the third point concerning the urine test given to discover whether or not appellant and the stepfather had recently utilized drugs, we find that while it might have been ultimately admissible, the court committed error in the manner in which it utilized the evidence. The parties consented to the drug test. However, when the drug test results were received by the court after the final hearing, the results were used to determine not only the recent use of drugs by appellant and her present husband, the stepfather, but also to determine that they had perjured themselves while previously testifying at the final hearing. That later utilization, after the final hearing was over and without giving appellant or the stepfather an opportunity to refute the court’s conclusion of perjury, was error and we cannot, at this stage of review, conclude that such utilization of the drug tests did *648 not have an important bearing on the trial judge’s decision to change custody. Quite obviously, the issues concerning the sexual abuse of the child and the stepfather’s use of drugs had an overwhelming influence on the trial judge's decision to change custody.
We, therefore, conclude that the evidence complained of by appellant was erroneously used by the trial court and that we must reverse and remand for a redetermination of the custody issue. On remand, further testimony may be offered by the parties or be required by the court. In order to achieve as little disruption in the life of the child as possible, we direct that the custody provisions of the order on appeal be continued until the trial court determines anew whether or not custody should be permanently changed from appellant/wife to ap-pellee/father/husband.
We have alluded in this opinion to the fact that the video tape may have been admissible for the limited purposes for which it was offered, and that the hearsay statements of the child may also have been admissible for the purpose of showing his reaction to the subject of drugs, but not for the truth of the statements he made. We have considered this matter carefully and take this opportunity to explain why, in a child custody case, the questioned evidence might be admissible for the purpose offered.
First of all, we believe in child custody cases, since the welfare of the child is paramount, it is important to a trial judge making that determination to understand as well as possible the nature and personality of the child and how the child interacts with his parents. Therefore, whether a child, for instance, is an aggressive and angry child about one parent may be important to the trial judge in making a custody determination. This is particularly true in children of very tender years.
We believe that section 61.20, Florida Statutes (1985), in providing for an investigation, social study and report by the Department of Health and Rehabilitative Services of “all pertinent details relating to the child and each parent” is a recognition of the admissibility of this type of evidence. While section 61.20 affords a specific exclusion from the technical rules of evidence for such report, we feel that the same reasoning applies to evidence such as that offered in this case for the limited purposes for which it was offered. If it is important that a trial judge charged with determining custody of a child understand a child as best he can, the incompetency of the child to testify should not prevent the trial judge from observing the child, either in person or by video tape, if that observation would help the judge make a proper determination of custody. In that instance, the evidence would be offered not to prove the truth of anything that was said, but to merely observe and consider the demeanor, understanding, maturity and hostility of the child and other factors relating to the personality of the child that may properly influence the judge in making a decision on custody. This is described in many texts and treatises on evidence as “demonstrative evidence.” See Gard, Jones on Evidence (6th ed.) vol. III, ch. 15.
In Jones, vol. III, § 15.1, p. 2, the authors describe a category of this type of demonstrative evidence as follows:
All of these things, except the last group, may be said to be “autoptic” in character, or as furnishing the vehicles of perception by the tribunal through its personal observation, as contrasted with the vehicle of descriptive, narrative or analytical testimony from the lips of witnesses.
According to the authors of 23 Fla.Jur.2d, § 277, p. 347:
Demonstrative evidence is of the highest rank, and is sometimes said to be the ultimate test of truth. This is because it is addressed directly to the senses.
Demonstrative evidence is described throughout all the treatises on the subject as being evidence which shows the condition of the object or thing of which the evidence is demonstrative. Thus, the appearance, attitude and behavior of a very young child may be very pertinent and is certainly relevant to a judge charged with *649 making a custody determination of that child. See further Kern v. Kern, 333 So.2d 17 (Fla.1976) for similar reasoning therein by our Supreme Court in upholding the constitutionality of section 61.20, Florida Statutes (1985)[1].
We, therefore, conclude that while the evidence sought to be admitted by appellee may have been admissible for the limited and restricted purposes offered, the trial court utilized the evidence beyond the scope of its admissibility and we, therefore, must reverse and remand for further proceedings consistent herewith.
DANAHY, C.J., and GRIMES, J., concur.

. This type evidence might also be admissible under section 90.803(3), Florida Statutes (1985). In addition, in this case, the parties concede that section 90.803(23) was not applicable.